(92 App. Div. 427.)

NEW YORK BANK NOTE CO. v. HAMILTON BANK NOTE ENGRAVING & PRINTING CO.

(Supreme Court, Appellate Division, First Department. March 18, 1904.)

1. REFEREE'S REPORT—ERRORS—CORRECTION.

On appeal from an order sustaining exceptions to a referee's report, a question as to whether there was a clerical error in the report could not be considered, since any such mistake should have been corrected in the lower court.

2. ACCOUNTING—ORDER—CONSTRUCTION—REFEREE'S DUTIES.

In a suit to restrain defendant from using certain printing presses, and for an accounting of profits made by him in printing strip tickets on the presses, it was ordered that plaintiff recover the damages which it had sustained, owing to the use of the presses by defendant in printing strip tickets, over the profits which defendant would have made by printing the same on the presses in its possession or known to and purchasable by it. *Held,* that one of the questions before the referee was what profits could have been made by defendant by printing the tickets on any other machine than those involved.

3. SAME—BURDEN OF PROOF.

The burden of showing what profits could have been made by defendant in printing the tickets on any other machine was on him.

4. SAME—ACCOUNTING—ELEMENTS OF LIABILITY.

In making up the accounting as to profits, defendant being engaged in other printing enterprises, the referee should have allowed rent for the space actually occupied by defendant in carrying on the business of printing strip tickets.

5. SAME—EXPENSES OF MANAGEMENT.

Defendant should have been allowed a percentage of its general expenses of management.

6. SAME—GENERAL EXPENSES.

Defendant should have been allowed a proper proportion of the general expenses of its business.

7. SAME—INTEREST.

In a suit for an accounting of profits made by defendant in the operation of certain printing presses in the printing of tickets, it was not proper to allow interest on the damages which plaintiff was found to have suffered.

Ingraham, J.. dissenting.

Appeal from Special Term, New York County.

Action by the New York Bank Note Company against the Hamilton Bank Note Engraving & Printing Company. From a judgment in favor of defendant, plaintiff appeals. Reversed.

See 75 N. Y. Supp. 520.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Edward P. Lyon, for appellant.
Charles F. Brown, for respondent.

VAN BRUNT, P. J. This action was brought to restrain the use by the defendant, the Hamilton Bank Note Engraving & Printing Company, of two presses known as the Kidder Perfecting Presses, and for an accounting of the profits made by the defendant bank note company in printing strip tickets upon said presses.

After the trial of the action, an interlocutory judgment was entered restraining the use of the presses as prayed for in the complaint, and awarding damages, and a reference was ordered to compute the same. Proceedings were subsequently had, which resulted in the modification of the interlocutory judgment, whereby it was adjudged, among other things, as follows:

"Ordered, adjudged, and decreed that the plaintiff recover from the defendants the damages which it has sustained by the breaches of the contract between the New York Bank Note Company, plaintiff's assignor, and the Kidder Press Manufacturing Company, and dated the 12th day of October, 1891, set forth in the complaint, which damages shall be the profits made by the defendant, the Hamilton Bank Note Engraving & Printing Company, upon all strip tickets printed by it upon the two aforesaid presses purchased from the Kidder Manufacturing Company, known as the Kidder Perfecting Press, on proof before the referee that the Kidder Perfecting Press was the subject of a monopoly for strip-ticket printing by virtue of outstanding patents, or was the only available machinery for printing strip tickets, or on proof that the Hamilton Bank Note Engraving & Printing Company could not have obtained the contracts to print said tickets except by means of the Kidder Perfecting Press, and, in the absence of such proof, that the damages shall be the saving in profit on said tickets, by the use of the Kidder Perfecting Presses, over the profits it would have made by printing the same on the presses in its possession, or known to and purchasable by it prior to December 29, 1892."

And a referee was appointed to compute the damages upon the basis laid down in this interlocutory judgment as amended.

The subsequent proceedings resulted in a report by a referee that the damages which the plaintiff was entitled to recover were the sum of $73,058.86, with interest amounting to $32,189.52, making in all at the date of the report, $105,248.38. The defendants filed exceptions to this report, and upon a motion to overrule these exceptions, and for final judgment upon the report, the exceptions were sustained, and the motion for final judgment was denied. From the order thereupon entered this appeal is taken.

It is claimed by the appellant that it is apparent, from the nature of the referee's report, that a clerical error was made in that part of the report where he says, "I further find and report in making such statement that no proof of the profits so charged the defendants could have been made or received by them but for the use by them of the machines in question," the claim being that the referee intended to say "part" instead of "proof." I do not see how we can consider any such question upon this appeal. If there was any mistake in the referee's report of the kind mentioned, it should have been corrected in the court below. The appeal here must be determined upon the record as we find it.

The respondents claim that the referee evidently intended, by the language used, that there was no proof before him that the profits which he determined were made could have been made by the Hamilton Company by the use of any other machine except the Kidder Perfecting Press. They then say: "But this was not only not correct, but it was not the question which was referred to the learned referee for his determination. He was not directed to determine whether the profits could have been made by the use of any other machine." In this view of the referee's duties, I think that the counsel for the respondents have entirely misapprehended the questions which were referred to the referee. One of the questions which he was necessarily called to pass upon, under certain contingencies, was what profits could have been made by the Hamilton Company by printing these tickets upon any machine other than the Kidder. If the plaintiff did not establish that the Kidder Perfecting Press was the subject of a monopoly for strip-ticket printing by virtue of outstanding patents, or was the only available machinery for printing strip tickets, or that the Hamilton Bank Note Engraving & Printing Company could not have obtained the contracts to print said tickets except by means of the Kidder Perfecting Press, then it became the duty of the referee to determine what were the profits of the printing upon the Kidder Perfecting Press, and what would have been the profits had the tickets been printed upon presses in the defendant Hamilton Company's possession, or known to and purchasable by it prior to December 29, 1892, and the difference was to be the damages which the plaintiff would have the right to recover.

It is claimed by the respondents that the Kidder Perfecting Press was not the subject of a monopoly by virtue of outstanding patents; that it was not the only available machinery for printing strip tickets; that the defendant, the Hamilton Company, did obtain contracts without said Kidder Perfecting Press; and they requested the referee so to

find. It is true that the referee refused so to do, but he proceeded to assess the damages as if those facts had been established, and in the manner in which he was directed to do by the decree. It is of no consequence as to what the referee discussed in his opinion; the question is, what did he report the profits to be of the printing of the tickets upon the Kidder machine, and what would have been the profits if the work had been done upon the presses of the defendant, the Hamilton Company, or presses available to it, the difference being the damage due the plaintiff? He has reported distinctly upon these two points, as follows: The profits realized for the printing of the tickets upon the Kidder Press he reported to be $73,958.86, and that there was no proof before him of the profits which would have been made by the Hamilton Company by the use of any other machine except the Kidder Perfecting Press. Thus, really but two questions are presented to be determined upon this appeal. One is whether the referee was correct in respect to the items with which he surcharged the Hamilton Company's account, and the other is whether there was any proof that profits could have been made had the Hamilton Company done the work upon its own machines, or upon machines available to it, and, if there were, what was the amount of such profits? There is also a subordinate question as to the allowance of interest, which will be discussed later.

We will consider the second question first. The burden of proof in respect to this matter lay with the defendants. They were permitted by the decree to mitigate the damages by the amount that they could show that they would have made had they done the work upon their own presses. I say, upon their own presses, because there is no evidence that there were any better machines procurable to do the work than the ones that the defendant company had in their possession, unless it was the Kidder Perfecting Press. There was no attempt made by the defendants to show, with any degree of particularity, as to what the profits were in printing these tickets upon the presses other than the Kidder Perfecting Press. It certainly was within their power to give accurate evidence upon this subject. Prior to the acquirement of the Kidder Perfecting Press, the defendant company had been printing these strip tickets upon their own presses, and afterwards, when the injunction in this action was granted, they again printed their strip tickets upon their old presses. Under these circumstances, it would seem that it would be possible to have given some precise data upon this subject. This they utterly failed to do. They contented themselves with the testimony of the parties who had been guilty of the fraud for which the defendants were to account in this action, which was of the most general character, and to the effect that the Kidder machine was worse than useless, as it did not do as good work as the presses that had been in use before they acquired the Kidder Perfecting Press; and, indeed, as Mr. Seebach says, "the Kidder will not do good work." Yet all the work of strip-ticket printing under the Manhattan contract after its acquisition was done on the Kidder, prior to the injunction in this action, at a confessedly large profit. Furthermore, Mr. Seebach was contradicted upon so many material points by the evidence of other witnesses that but little weight could be given to any opinions that he might express, and upon this question of profit it seems

to rest entirely upon the opinion of Mr. Seebach, because he gives no facts. One of the reasons that he gives for the undesirableness of the Kidder Press is that it is a very complicated piece of machinery, and was frequently getting out of repair, and that they were put to great expense in repairing it, and, also, that they thereby lost a great deal of time. When asked to produce the bills for repairs he can only produce one, I think, and that for some insignificant piece of work. When he attempts to say that the waste in one was as great as in the other, he puts the waste from his old machines at 12½ pounds of paper a day. He says that he had it weighed for a time. The man whom he (Seebach) says weighed the waste says that it was 25 or 30 pounds a day, and another witness says that it was more. Mr. Seebach wholly fails to deny the testimony of Mr. Kendall that he (Seebach) told him that the cost to them of printing strip tickets upon the machines the defendant company had was 14 cents a thousand. Nor does he deny Mr. Kendall's testimony that Seebach and himself examined the books of the defendant company, and found from the books that that was the cost. All that Seebach will say about this is that he does not remember. It being within the power of the defendants to have given accurate and certain evidence as to the cost of printing these strip tickets upon their old presses, from their failure to do so but one inference can be drawn, and that is that they could not. This provision in the decree as to the profits which could be made upon the old machines was for the defendants' benefit, and if they failed to produce reasonably convincing proof, which it was very easy for them to do had it existed, it does not lie in their mouth, they having been the wrongdoers, to complain if the conclusion is arrived at that they have not produced the proof because it did not exist. Upon considering the whole of this evidence, it seems to me that the conclusion of the referee, that there was no proof that profits could have been made upon the old machines of the defendants, was well founded. Our attention has been called to the findings of the previous referees upon this subject. From the view of the burden of proof that was taken by at least one of those referees, his finding in this respect can be easily explained. If the burden of showing what was the difference of the profits had been upon the plaintiff, as the referee held, a different result might have been arrived at; but in the case, as it now stands, the burden is upon the defendants to reduce the damages by showing what profits would have been made by printing these tickets upon their old machines, and I repeat that in this case there was no reason for surmise, guess, or inference; the defendant company had printed these very tickets upon their old machines, must have known exactly what they cost, and never produced their books and showed from them what it was.

We will now consider the other principal question, and that is, was the referee justified in making the surcharges which he did upon the account of profits furnished by the defendant company? In the examination of this question we are embarrassed by the paucity of the evidence, by the light of which we could apportion the general expenses of the business between the various kinds of business done by the defendant company with its plant. We must therefore get at the expense of the business as well as we can, and if proper allowances are not made

to the defendant company it arises from the fact that they have not given us the evidence from which we can deduce accurate results. We think, however, that the referee in some instances has not made sufficient allowance in respect to some of the items of expense in this business. I do not think he has allowed sufficient in the matter of rent. He has not even allowed rent for the space actually occupied for the strip-ticket business, and, in addition to the space actually occupied, some percentage of the vacant space, consisting of passageways, etc., should certainly be allowed. This would add at least 300 feet to the estimate of the referee, and make the surcharge about $5,630, instead of $6,756. So, in regard to managerial expenses, it would seem proper to allow the same percentage, as these are general expenses which relate to the management of the whole business, in the same manner as rent. I think that there should have been allowed under this head about $6,500, instead of $3,000, which was allowed. For the same reasons a proper proportion of the general expenses should have been allowed. They are incurred in the general conduct of the whole business, and a proper amount was properly chargeable to the account of the strip-ticket printing. There should have been allowed upon this account the sum of $6,782.31, instead of nothing. As interest upon capital, there should have been allowed the sum of $4,320, instead of $3,226.50, the difference arising in the reduction in machine cost. The loss on Kings Co. strip tickets seems to have been properly surcharged, as that loss arose from their own business methods. The account would then stand thus: Admitted profits, $34,626.65; rent overcharged, $5,630.00; managers' salaries, overcharged, $6,500.00; general expenses, overcharged, $6,782.31; interest on capital, overcharged, $5,830.00; loss on Kings Co. tickets, overcharged, $1,888.09—making $60,548.95, the amount with which the defendants are chargeable as the profits made by them by the printing of the strip tickets upon the Kidder Perfecting Press; and, as the defendant company has not furnished any reliable evidence that any part of this profit could have been made upon the other presses which they had, and upon which they printed these strip tickets both before and after they had acquired the Kidder Perfecting Press, the plaintiff was entitled to judgment for this amount.

The only question remaining is the one of interest. I do not think that interest was properly allowed. The damages were clearly unliquidated. There was no method by which the defendant could have computed the amount. The rule of damages depended upon extrinsic facts, over the proof of which they had no control. I do not see but that the rule in respect to interest on profits in the case of an infringement of a patent should not be applied in this case.

I think, therefore, that the order appealed from should be reversed, and judgment entered upon the referee's report in favor of the plaintiff for $60,546.95, with interest from the date of his report, without costs of this appeal, and with costs in the court below. All concur, except INGRAHAM, J., who dissents.